*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRINCETON NEUROLOGICAL SURGERY, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>AETNA, INC. et al,<br><br>Defendants. | Civil A. No.: 3:22-cv-01414 (GC) (DEA)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

      Before the Court is a Motion to Dismiss filed by Defendants Aetna, Inc. and Aetna Life Insurance Company (collectively "Aetna" or "Defendants") to dismiss the five-count Amended Complaint, filed by Plaintiff Princeton Neurological Surgery, P.C. ("PNS" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff brings this suit to recover payment from Aetna related to surgical procedures which it performed on a patient insured under an Aetna-administered employee health insurance plan.  For the reasons set forth below, the Motion is **GRANTED**.  To the extent Plaintiff believes it can plead additional facts to cure the deficiencies in its claims, Plaintiff is given leave to amend its Complaint within thirty (30) days from the date of the accompanying Order, consistent with this Opinion.

1

## I. BACKGROUND

### a. Factual Background

The relevant facts herein are derived from Plaintiff's Complaint. Plaintiff PNS is a New Jersey corporation engaged in the practice of neurological surgery. ECF No. 1-2, Notice of Removal ("Not. of Removal"), Ex. 2. ¶ 1 ("Am. Compl."). Its office is located in Hamilton, New Jersey. Am. Compl. ¶ 1. PNS is solely owned and operated by John D. Lipani, M.D. ("Dr. Lipani"), a licensed physician who practices at PNS. *Id.* ¶ 2. Defendants Aetna, Inc. and Aetna Life Insurance Company are insurers for healthcare plans offered by various employers, specifically, by processing and reimbursing "healthcare expenses incurred by insureds for services and/or products covered by the plans." *Id.* ¶¶ 3–5.

This dispute arises out of a surgery performed by PNS on "J.R.", a patient insured through Aetna Choice POS II ("J.R.'s Plan"), an employee health benefit plan for which Aetna is the claims administrator and NECA Local Union No 313, IBEW ("Union") is the plan administrator. *Id.* ¶¶ 7, 8 12–14, 17, 42 n.1. Upon examination of J.R., Dr. Lipani recommended a surgical procedure that involved a C5-6, C6-7 anterior cervical decompression and instrumented fusion. *Id.* ¶ 17.

Prior to the surgery, on April 26, 2021, Plaintiff called Aetna to verify the payment structure of J.R.'s Plan ("April 26, 2021 Aetna Call"). Am. Compl. ¶ 15. During the phone call, an Aetna representative explained to Plaintiff that J.R.'s Plan had a "$2,000 out of pocket maximum which paid out of network providers on 100% of the of Fair Health value based on geozip." *Id.* ¶ 16. According to Plaintiff, a letter dated May 7, 2021 ("May 7, 2021 Aetna Letter") sent to J.R. and PNS by Aetna authorized and approved the recommended surgical procedures for J.R. *Id.* ¶ 18. Based upon the April 26, 2021 Aetna Call and the May 7, 2021 Aetna Letter,

Plaintiff alleges that it anticipated a payment of $304,715.00 from Aetna in connection with J.R.'s surgery. *Id.* ¶¶ 19, 20.

On May 14, 2021, Plaintiff performed the preauthorized surgical services on J.R. Am. Compl. ¶ 21. In relation to J.R.'s Plan, Plaintiff was an "out of network" medical provider of such services. *Id.* ¶ 16. Thereafter, on May 14, 2021, Plaintiff submitted a bill to Defendants for $304,715.00 for the surgery based upon the "preauthorized" procedural codes. *Id.* ¶ 22.

On August 3, 2021, Union paid Plaintiff $3,319.36, leaving an unpaid amount of $301,395.64 pursuant to the Explanation of Payment that accompanied Union's payment. *Id.* ¶¶ 42–43. Plaintiff appealed the payment and exhausted its administrative remedies surrounding the remaining unpaid bill. *Id.* ¶¶ 44–47.

### b. Procedural History

On February 10, 2022, Plaintiff initiated the instant case against Defendants in New Jersey Superior Court. ECF No. 1-1, Ex. 1. On February 15, 2022, Plaintiff filed an amended complaint alleging five state common law causes of action: (1) breach of implied contract; (2) breach of warranty of good faith and fair dealing; (3) promissory estoppel; (4) unjust enrichment;[1] and (5) negligent misrepresentation. Am. Compl. ¶¶ 49–76. On March 16, 2022, Defendants removed the present matter to federal court, pursuant to 28 U.S.C. § 1441, alleging diversity jurisdiction and an amount in controversy exceeding $75,000. ECF No. 1, Not. of Removal. The instant motion to dismiss ensued. ECF No. 9, Defendant's Motion to Dismiss ("Mot. To Dismiss").[2]

---

[1] In its briefing for this motion, Plaintiff voluntarily dismissed its unjust enrichment claim against Defendants. *See* ECF No. 13, Plaintiff's Opposition Brief at 3 n.1 ("Pl. Opp. Br.").

[2] On September 13, 2022, Defendants filed a Notice of Supplemental Authority regarding various orders in *Princeton Neurological Surgery, P.C. v. Horizon Blue Cross Blue Shield of N.J.*, No. MER-L-796-19 (N.J. Super. Ct. Law. Div. 2022). ECF No. 19. Plaintiff filed a letter on September 21, 2022 opposing Defendants' Notice of Supplemental Authority. ECF No. 20. Generally, if

3

## II.     STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 547; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard under *Twombly* and *Iqbal*, courts within this Circuit apply a three-step test. *Santiago v. Warminster Twp.*, 629

---

pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new or additional arguments that were absent from the movant's complaint. *Atkins v. Capri Training Ctr., Inc.*, No. 13-06820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) (citing *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255 (3d Cir. 2008)). Here, while the New Jersey state court case is not binding authority, it can be seen as persuasive authority that the Court may consider without causing the motion to be treated as one for summary judgment. To the extent either party presents additional arguments or raises new issues in their supplemental authority letters, such briefings are not considered.

F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Generally, the court may not "consider matters extraneous to the pleadings" when considering a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). However, the court, without converting the motion to dismiss into one for summary judgment, may consider (1) exhibits attached to the complaint, (2) matters of public record, (3) items subject to judicial notice, and (4) "document[s] integral to or explicitly relied upon in the complaint...." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

### III. DISCUSSION

Defendants argue that Plaintiff's alleged claims are expressly preempted under Section 514 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") because they each "relate to" J.R.'s ERISA-governed insurance plan. In the alternative, Defendants contend that Plaintiff failed to state a claim upon which relief can be granted with respect to each count in the Amended Complaint.

#### a. *Documents Integral to the Complaint*

As an initial matter, the parties dispute whether the Court, in ruling on a motion to dismiss, may consider the documents exhibited to Defendants' motion. *See* ECF No. 9-4, Declaration of

Elizabeth C. Petrozelli ("Petrozelli Decl."), Ex. B., Pre-surgical Authorization Letter Dated May 7, 2021 ("Pre-surgical Authorization Letter"); ECF No. 9-5, Declaration of Chelsea A. Biemiller ("Biemiller Decl."), Exs. A, B, Transcription of the Recordings of the Calls on April 26, 2021 ("Call Transcripts").

Under the integral document exception, a court may take judicial notice of documents that are "[u]ndisputedly authentic documents *integral to or explicitly relied* upon in the complaint." *In re Egalet Corp. Sec. Litig.*, 340 F.Supp.3d 479, 496 (E.D. Pa. 2018) (emphasis added) (citations omitted); *Angstadt*, 377 F.3d at 342. Even if a "[c]omplaint does not explicitly refer to or cite [a document] ... [the] critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Burlington Coat*, 114 F.3d at 1426 (citation omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Here, the claims asserted in the Amended Complaint are based upon the alleged representations made by Defendants to Plaintiff in the April 26, 2021 Aetna Call and the May 7, 2021 Aetna Letter. For example, Plaintiff alleges that it anticipated payment from Aetna "[b]ased on the clear representations made in the April 26 call." Am. Compl. ¶ 19. Further, the Amended Complaint alleges that Aetna approved of J.R.'s treatment plan via the May 7, 2021 Aetna Letter and that "PNS then reasonably relied upon Aetna's letter authorizing the procedure" and the proposed CPT codes. *Id.* ¶¶ 18–20.

Therefore, while Plaintiff did not attach any exhibits to its complaint, nonetheless, the Court may consider the pre-surgical authorization letter dated May 7, 2021, and the transcripts of the two phone calls held on April 26, 2021 attached to Defendants' motion because they are

"*integral to or explicitly relied upon* in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Consideration of these referenced documents will not require the conversion of a motion to dismiss to one for summary judgment under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Discenza v. England*, No. 05–2660, 2007 WL 150477, at *2 (D.N.J. Jan. 17, 2007).

### b. ERISA Preemption

Next at issue is whether Section 514 of ERISA expressly preempts Plaintiff's state common law claims.

ERISA applies to "any employee benefit plan if it is established or maintained ... by any employer engaged in commerce...." 29 USC § 1003(a). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Further, ERISA includes expansive preemption provisions, "which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (citations omitted); *see also Metro. Life. Ins. Co. v. Taylor,* 481 U.S. 58, 65 (1987) (stating that ERISA has "extraordinary pre-emptive power").

ERISA's express preemption provision, Section 514, states, in relevant part, that "the provisions of this subchapter shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan*...." 29 U.S.C. § 1144(a) (emphasis added). "The scope of '[s]tate laws' that may 'relate to' a plan is expansive, statutorily defined to encompass "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226 (3d Cir. 2020) (citing 29 U.S.C. § 1144(c)(1)). "This includes not only state statutes, but also common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014); *see also Nat'l Sec.*

Case 3:22-cv-01414-GC-DEA   Document 23   Filed 02/28/23   Page 8 of 16 PageID: 611

*Sys., Inc. v. Iola*, 700 F.3d 65, 83-84 (3d Cir. 2012) ("State common law claims fall within this definition and, therefore, are subject to ERISA preemption.").

The Supreme Court has held that ERISA preempts two categories of state laws that "relate to" an ERISA plan: (1) state laws that have a "reference to" an ERISA plan or (2) state laws that have a "connection with" the plan at issue. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 (1983); *see also Menkes*, 762 F.3d at 293–94; *Plastic Surgery Center*, 967 F.3d at 226. First, a state law has "reference to" ERISA plans "[w]here a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation." *Plastic Surgery Center*, 967 F.3d at 226 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016)). Second, a state law has a "connection with" ERISA plans where the law "'governs ... a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille*, 577 U.S. 312 at 320 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). A state law also might have an impermissible connection with ERISA plans if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Gobeille*, 577 U.S. at 320 (citations omitted).

Here, Plaintiff seeks to bring claims under state common law for breach of implied contract, breach of covenant of good faith and fair dealing, promissory estoppel, and negligent misrepresentation. Am. Compl. ¶¶ 49–76. Generally, each of Plaintiff's claims are premised on Defendants' pre-surgery verbal representations and written authorizations of the surgical procedures to be provided by Plaintiff to J.R. Am. Compl. ¶¶ 50, 58, 66, 73. Specifically, Plaintiff argues that its claims are based upon specific oral representations made by Defendants to Plaintiff pursuant to the April 26, 2021 Aetna Call and preauthorization of surgical procedures set forth in

8

the May 7, 2021 Aetna Letter. As such, because Plaintiff seeks payment from Defendants for services arising from an implied agreement or promise, independent of the terms of J.R.'s ERISA-governed plan,[3] Plaintiff argues that none of its claims "relate to" an ERISA plan. *See, e.g., Gotham City Orthopedics, LLC v. Aetna Inc.*, No. 20-19634, 2021 WL 9667963, at *4 (D.N.J. Sept. 10, 2021).

In a recent case involving substantially similar facts out of this District, the district court held that the plaintiff's common law claims were preempted by ERISA because they were claims for benefits due under the patient's ERISA plan. *Advanced Orthopedics and Sports Med. Inst., P.C. v. Oxford Health Insurance, Inc.*, No. 21-17221, 2022 WL 1718052, at *8 (D.N.J. May 27, 2022). There, the plaintiff, an out-of-network healthcare provider, contacted the insurer and obtained a preauthorization letter prior to performing the preauthorized surgery. *Id.* at *1–2. The plaintiff alleged that based on the insurer's preauthorization, plaintiff "reasonably understood based on state coverage law mandates and prior course of dealing with [the insurer] that the preauthorization of services contemplated payment of 100 percent of Plaintiff's UCR charges". *Id.* at *8. However, the court held that the preauthorization letter could not serve as the basis for a separate arrangement between the parties that did not arise from a health benefits plan. Instead, the court found that the plaintiff's claims related to an ERISA plan, "because the pre-authorization letter indicates that the insurer looks to the ERISA plan to determine both the scope of any services eligible for reimbursement, and the amount of any subsequent payment." *Id.*

For similar reasons as set forth in *Advanced Orthopedics*, the Court reaches the same conclusion here—Plaintiff's state common law claims "relate to" J.R.'s Aetna ERISA plan.

---

[3] Plaintiff does not dispute that J.R.'s Plan is governed by ERISA.

As plead, the Amended Complaint seeks damages pursuant to the terms of J.R.'s ERSIA-governed plan, not any independent relationship between Plaintiff and Defendants. Plaintiff cites to the "clear representations made in the April 26 call" and "Aetna's letter authorizing the procedure" as the basis for its anticipation of receiving a "Promised Amount" of $304,715 from Aetna. Am. Compl. ¶¶ 19, 20, 22. But in neither the call nor in the letter did Aetna make any specific representations or express promises to pay Plaintiff that were independent of the terms of J.R.'s Plan.

During the April 26, 2021 Aetna Call, an Aetna representative told Plaintiff that "J.R. was enrolled in a POS II plan" "which paid out of network providers". Am. Compl. ¶ 16. Indeed, any representations made by Aetna on the April 26, 2021 Aetna Call were pursuant to the terms of J.R.'s Plan providing for out-of-network benefits. In the transcription of the April 26, 2021 Aetna Call recording, the Aetna representative expressly references and explains the terms of J.R.'s Plan with respect to out-of-network coverage. *See, e.g.*, Biemiller Decl., Ex. A. at 2:23–3:2 ("He does have out-of-network coverage.") Specifically, the Complaint alleges that Aetna's promise to pay a total amount of $304,615.00 was based upon its representation on the April 26, 2021 Aetna Call that J.R.'s Plan "paid out of network providers on 100% of Fair Health value based on geozip." Am. Compl. ¶ 16. But even this representation, assuming *arguendo* it was sufficient to give rise to a verbal or quasi-contract, it was made in connection with the plan itself. Biemiller Decl., Ex. A at 4:12-16 ("This *plan* is going to pay 100 percent of fair health rate you're saying?" "Yes, ma'am".) (emphasis added).

As was the case in *Advanced Orthopedics*, here, there are no allegations of oral promises to pay a certain amount by Aetna to Plaintiff for surgical services. *See* 2022 WL 1718052, at *6. In fact, no surgical services appeared to have been discussed during the telephone call between

Plaintiff and Aetna. Plaintiff told Aetna on the telephone call that the types of services it was asking about was "initially, a special office visit and *then perhaps spine surgery if he needs it*." Biemiller Decl., Ex. A. at 2:15–17 (emphasis added). As such, Aetna's representations as to out-of-network benefits under J.R.'s Plan related primarily to payment for the initial medical office visit. *See, e.g., id.* at 3:1–2 ("For the medical office visit, there would be no deductible"), 3:1–2 ("Now the member will have $10 per visit deductible for the office visit"), 4:4–5 ("[F]or the office visit it's 100%"), 5:21 ("For the office visits"); Biemiller Decl. Ex. B. at 3:19–20 ("For the medical visit, it's 100 percent of reasonable and customary [rate].")[4] Such representations providing information about the terms of J.R.'s Plan cannot be found to be independent or separate from J.R.'s Plan. Nor can such representations support any allegations that Aetna agreed to pay for surgical services for J.R. when no such surgical services were mentioned or even contemplated at the time.[5]

In contrast to the preauthorization letter in *Advanced Orthopedics*, here the May 7, 2021 Aetna Letter does not contain an "In-Network Precertification Exception Disclaimer" expressly stating that it did not guarantee payment or that any payment is based on the terms and conditions of the insured's plan. 2022 WL 1718052, at *1–2, 8. However, because the preauthorization letter here was issued pursuant to J.R.'s Plan and references it throughout the body of the letter, the Court finds it does not give rise to a separate agreement independent from the terms of J.R.'s Plan

---

[4] Discussions during the telephone call referencing reimbursements rates (*e.g.*, fair health rate, reasonable and customary rate) relate to the out-of-network benefits that J.R.'s Plan provides for services its participants obtain from out-of-network medical providers. *See* Biemiller Decl., Exs. A, B. Thus, regardless of the rate at issue, Plaintiff's basis for payment from Aetna is pursuant to the out-of-network benefits allowed for in the plan.

[5] Plaintiff's claims are based upon Aetna's alleged failure to pay for "surgical services provided by PNS to J.R.", not the medical visit. Am. Compl. ¶ 50.

nor does it support Plaintiff's allegations that Aetna approved and promised to pay the amount in the letter.

The May 7, 2021 Aetna Letter provided preauthorization approval for two services to be performed by Plaintiff on J.R. Petrozelli Decl., Ex. B. The letter, however, does not specify the amount of money to be reimbursed for the approved services. Plaintiff calculated the "Promised Amount" of reimbursement based upon the proposed CPT codes that were preauthorized in the May 7, 2021 Aetna Letter. Am. Compl. ¶¶ 19, 22. Furthermore, the letter expressly states that the authorization approvals are "subject to the requirements in this letter" and that they may not be paid pursuant to certain circumstances related to J.R.'s ERISA-governed plan. *See* Petrozelli Decl., Ex. B at 3 ("This authorization approval is NOT effective and benefits may not be paid if: … the member is no longer covered at the time the approved treatment/services are actually performed … the member has exceeded any applicable benefit maximums under the plan … the member's plan no longer includes coverage for the approved treatment/services"). Finally, the letter also expressly references J.R.'s ERISA plan. *See, e.g., id.* at 4 ("Members should refer to their plan administrator to determine exclusions and limitations under the plan") ("Contact your plan administrator for information on your out of network benefits"). The preauthorization letter also goes on to state that "[r]eimbursement will be based on standard coding and bundling logic and any mutually agreed upon contracted or negotiate[d] rates, subject to any and all copays or coinsurance requirements." *Id.*

As such, Plaintiff's claims seeking payment are based solely upon the terms of J.R.'s Plan governing payments for services provided by out-of-network providers. Plaintiff's request for payment was pursuant to the terms of J.R.'s Plan allowing for out-of-network benefits, rather than any independent representations or promises Defendants made in the April 26, 2021 Aetna Call or

the May 7, 2021 Aetna Letter. Thereafter, after Plaintiff submitted its bill to Defendants, Defendants then processed and adjudicated Plaintiff's claims for payment pursuant to the terms of that plan. For example, the initial payment Plaintiff received for J.R.'s surgery was through a check sent by Union because "the plan is structured whereas the Union is the plan administrator and Aetna is the claims administrator". Am. Compl. ¶ 42, n.1. Indeed, the Amended Complaint does not plead sufficient facts that would remove Plaintiff's claims from the scope or terms of the ERISA plan and allow them to avoid preemption. *Compare Haghighi v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-20483, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020) (dismissing a breach of contract claim due to preemption by ERISA where "Plaintiffs ha[d] not alleged the existence of an independent agreement from the Plan") *with Jewish Lifeline Network, Inc. v. Oxford Health Plans, Inc.*, No. 15-0254, 2015 WL 2371635, at *5 (D.N.J. May 18, 2015) (finding that the plaintiff's claims were sufficiently independent from the ERISA plan because the defendants' made express promises regarding specific coverage.)

In opposition, Plaintiff cites to the Third Circuit's decision in *Plastic Surgery Center*, 967 F.3d, in which Plaintiff argues that the Third Circuit held that state common-law claims, such as breach of contract and promissory estoppel do not "relate to" ERISA plans since these claims require "only a cursory examination of the plan". *See* Pl. Opp. Br. at 24. However, the facts here distinguish this case from *Plastic Surgery Center*.

In *Plastic Surgery Center*, the Third Circuit addressed the issue of express preemption under ERISA in circumstances where an insurer reneges on a promise, made to an out-of-network healthcare provider, to pay for services provided to patients not otherwise available in-network. 967 F.3d at 223. There, the ERISA plans did not provide out-of-network benefits at all, and therefore, the out-of-network provider negotiated with the insurer over multiple telephone

conversations, during which the insurer "agreed to approve and pay for" all services necessary to perform the insured's surgery and to provide payment at the "highest in[-]network level." *Id.* at 223. Such an arrangement was not limited to benefits covered under the plan because only the amount of payment, not the scope of services, was to be determined in accordance with the terms of the plan. *Id.* at 232. The Third Circuit found that claims based upon such oral promises to pay where only the amount of payment is tied to the terms of the plan do not necessarily trigger express preemption under ERISA. *Id.* at 233–34.

Here, as in *Plastic Surgery Center*, Plaintiff is an out-of-network provider without a pre-existing contractual relationship with Aetna, the insurer. *See* 967 F.3d at 231. However, unlike in *Plastic Surgery Center*, in this case, J.R.'s Plan did provide out-of-network coverage. Am. Compl. ¶ 16. Indeed, the basis for Plaintiff calling Defendant on April 26, 2021 was to "verify the payment structure of J.R.'s plan." Am. Compl. ¶ 15. In further contrast to *Plastic Surgery Center*, during the telephone call, Plaintiff sought information about "the details of [J.R.'s] out-of-network benefits for professional services" but did not provide Aetna with any specifics as to the types of medical services and procedures J.R. would require. Biemiller Decl., Ex. A. at 2:10–14. When asked by Aetna about what types of services were to be provided, Plaintiff responded that "initially, a special office visit and then *perhaps* spine surgery if he needs it". *Id.* at 2:10–17. In *Plastic Surgery Center*, the insurance company was aware of the specified services for which it agreed to approve and pay for through oral agreements because the insured patients were referred to the out-of-network medical provider for a specific and niche surgical procedure that no in-network physicians were available to perform. 967 F.3d at 223–24. Here, Plaintiff had not yet evaluated J.R. or even determined that he would require surgery at the time of the April 26, 2021 Aetna Call. *See* Biemiller Decl., Ex. A. at 2:15–17. No surgical procedures or services were discussed during

the April 26, 2021 call with Aetna. As such, Aetna did not and could not provide any oral promises to pay for any of J.R.'s surgical procedures that it had no knowledge of at the time of the telephone call.

Moreover, because J.R.'s Plan provided at least some benefits to out-of-network providers, the May 7, 2021 Aetna Letter also does not give rise to an agreement to pay independent of J.R.'s Plan. The letter and the authorization approvals contained therein were issued pursuant to J.R.'s Plan. *See, e.g.*, Petrozelli Decl., Ex. B. at 1 ("Plan: NECA LOCAL 313 IBEW HEALTH AND WELFARE FUND"). Furthermore, the letter states that benefits may not be paid in accordance with the authorization approvals depending on various changes in circumstances relating to the insured patient and the underlying plan. *Id.* at 3–4. Thus, in contrast to the insureds in *Plastic Surgery Center*, here, "the scope of coverage, as well as payment, would be limited to the terms of the plans—leaving open the possibility that some services would not be compensated at all." 967 F.3d at 231.

As such, Plaintiff's state common law claims seeking payment do not turn on any obligations generated outside of or independent from the ERISA plan. Accordingly, the Court finds that Plaintiff's common law claims are expressly preempted by ERISA because they "relate to" J.R.'s ERISA plan.[6] Each of Plaintiff's claims are dismissed.

---

[6] Defendants further argue that Plaintiff has failed to state a claim upon which relief can be granted with respect to each count in the Amended Complaint. However, the Court need not analyze the sufficiency of each claim here, as the Court finds that Plaintiff's claims "relate to" an ERISA plan and are thus, expressly preempted.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. To the extent that Plaintiff believes it can plead additional facts to cure the deficiencies in its claims, Plaintiff is given leave to amend the Complaint within thirty (30) days from the date of the accompanying Order.

Dated: February 28, 2023

<div style="text-align: right;">
<u>/s/ Georgette Castner</u><br>
Hon. Georgette Castner<br>
U.S. District Judge
</div>